IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE BORREANI, et al.,<br><br>   Plaintiffs,<br> v.<br><br>KAISER FOUNDATION HOSPITALS, et al.,<br><br>   Defendants._____/ | No. C 12-00925 RS<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND REMANDING THE CASE FOR LACK OF SUBJECT MATTER JURISDICION** |

## I.  INTRODUCTION

Following Charles Borreani's death, his surviving relatives filed suit against Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, and Kaiser Permanente Medical Group (collectively "Kaiser") alleging they withheld critical information from decedent's doctors about the safety of prescription drugs Neurontin and gabapentin.  Defendants move to dismiss this action in its entirety arguing that all asserted claims are preempted under the Employee Retirement Income Security Act ("ERISA").  For the following reasons, defendants' motion to dismiss is denied and this matter is remanded for lack of subject matter jurisdiction.

## II.  RELEVANT FACTS

Kaiser is an integrated managed care consortium that operates medical facilities, employs health care providers, and distributes a variety of medical services. In this capacity, Kaiser sells medical insurance plans to both individuals and employers and regulates which prescription drugs and services should be included in said coverage. Decedent Charles Borreani purchased one of these plans through his employer. As part of this coverage, Kaiser utilizes a centralized Drug Information Service ("DIS") to research drugs and present information about these drugs to physicians and to the company's eight regional divisions. Each region's Pharmacy and Therapeutics ("P&T") Committee then uses this data to choose the safest and most effective drugs to include in its drug formulary, a catalog of pre-approved medications. Drugs are listed without restrictions, with restrictions, or with a variety of guidelines. If a drug appears without restrictions, it may be prescribed for whatever condition the physician deems appropriate. Alternatively, if a drug is listed with certain guidelines or restrictions, the physician may consider those limitations when prescribing to patients. Although Kaiser will pay for off-formulary prescriptions, an internal study concluded that over 95% of prescriptions from Kaiser doctors conformed to the formulary guidelines.

Pursuant to this evaluation system, Kaiser added the Pfizer drug Neurontin to all regional formularies in 1994. From 1997 to 1999, the drug was listed as unrestricted. Neurontin was tremendously popular and remained on all eight formularies for over ten years. After this period, Kaiser discovered Pfizer was utilizing illegal strategies to market Neurontin for off-label use. Specifically, Pfizer was encouraging physicians to prescribe large doses of the drug to treat neuropathic pain all the while suppressing data linking the medication to the development of suicidal thoughts.

Upon learning of this alleged illegal behavior, Kaiser filed suit against Pfizer, joining the multidistrict *In re Neurontin Marketing and Sales Practices* litigation. At trial, Kaiser agents testified that had the company known of Neurontin's dangerous side effects, it would not have listed it as unrestricted in the formularies. They also represented that they intended to educate Kaiser physicians about the increased risk of depression associated with high doses of the drug. In March

2010, the jury returned a verdict against Pfizer, finding the company fraudulently marketed Neurontin for off-label use at unsafe doses of greater than 1800 milligrams per day. According to plaintiffs, Kaiser has yet to notify its physicians of the Court's findings or to modify the formularies to include depression as a side effect of Neurontin or of its generic version, gabapentin.

In May 2009, while the Pfizer litigation was pending, decedent Charles Borreani began experiencing extremity numbness. He made an appointment with his Kaiser primary care physician who diagnosed him with peripheral neuropathy and prescribed gabapentin. Over the next year and a half, Borreani continued to take gabapentin at varying doses, while simultaneously developing an array of psychiatric symptoms such as, vertigo, drowsiness, blurred vision, and depressive thoughts. In July 2010, he complained again to his primary care physician who increased his gabapentin dosage to 2,400-3,200 milligrams per day. Two months later, Borreanni committed suicide.

Decedent's surviving relatives filed suit in the County of Alameda Superior Court against Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, and Kaiser Permanente Medical Groups. According to the FAC, together, these Kaiser entities provided medical coverage to Borreani, managed the hospital at which he sought treatment, and employed the physicians who prescribed gabapentin. Plaintiffs allege that following the Pfizer litigation, Kaiser wrongfully withheld vital information from its physicians about the efficacy and safety of Neurontin for off-label use in the treatment of peripheral neuropathy. According to plaintiffs, because of this failure to inform, decedent's doctors were unaware of the side effects associated with the drug and continued to prescribe it for his neurological disorder despite his developing psychiatric illness. The First Amended Complaint ("FAC") asserts claims for: (1) Intentional Misrepresentation; (2) Negligent Misrepresentation; (3) Concealment; (4) Fraud; (5) Negligent Failure to Warn; (6) Negligence; and (7) Medical Negligence.[1] Defendants removed the case to this Court asserting federal question jurisdiction under ERISA, and now move to dismiss the action on the basis of ERISA preemption.

### III. LEGAL STANDARD

---

[1] Plaintiffs' original complaint also advanced claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

3

A. <u>Motion to Dismiss</u>

Under Federal Rule of Civil Procedure ("FRCP") 8(a)(2), a complaint must present "a short and plain statement of the claim" demonstrating that plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). If the complaint does not meet this standard, the defendant may move to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate if the claimant either does not raise a cognizable legal theory or fails to allege sufficient facts to support a cognizable claim. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Thus, while a legally sufficient complaint does not require "detailed factual allegations," it must contain more than "unadorned" assertions of harm or bare legal conclusions without factual support. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion to dismiss, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *See Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

B. <u>Remand for Lack of Subject Matter Jurisdiction</u>

Removal of a state court action to federal court is appropriate only if the federal court would have had original subject matter jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). If, following removal, a federal court determines there was a defect in the removal procedure or an absence of subject matter jurisdiction, it may remand the action to state court *sua sponte* or on motion of a party. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). In deciding whether removal was proper, courts strictly construe the statute against finding jurisdiction, and the party invoking federal jurisdiction bears the burden of establishing that removal was appropriate. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) (citations omitted). Where doubt exists regarding the right to remove an action, it should be resolved in favor of remand to state court. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

IV. DISCUSSION

A. <u>ERISA Preemption</u>

Defendants argue that plaintiffs' FAC must be dismissed because all claims are preempted under ERISA. According to defendants, at base, plaintiffs' entire suit relates to decedent's employer sponsored health plan and is, therefore, fully within the scope of ERISA's civil enforcement scheme. Plaintiffs concede that Borreani's health plan was an employee welfare benefit plan covered by ERISA, *see* 29 U.S.C. § 1002, and acknowledge that the two breach of contract claims asserted in their original complaint may have been preempted. They insist, however, that the pleadings, as amended, make no reference to the plan's language and do not seek to vindicate or to clarify any benefits under the plan. Consequently, ERISA is inapplicable and the action should be remanded for lack of subject matter jurisdiction.

Congress enacted ERISA in order to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004) (explaining that ERISA provides a variety of remedies and sanctions intended to protect the interests of plan participants and beneficiaries). In structuring this regime, Congress included "expansive pre-emption provisions . . . to ensure that employee benefit plan regulation remained exclusively a federal concern." *Id.*; *see* 29 U.S.C. § 1144. Although these provisions are broadly worded, application of the legislative language has developed from a "plain language interpretation, in which ERISA would have preempted nearly everything, to a more pragmatic interpretation, in which courts seek to preserve the goals of Congress . . . while maintaining state control in traditional fields of state regulation." *Bui v. Am. Telephone & Telegraph Co.*, 310 F.3d 1143, 1147 (9th Cir. 2002) (refusing to preempt state medical malpractice claims). Under this legislative scheme, there are two types of ERISA preemption: (1) complete preemption under ERISA § 502, *see* 29 U.S.C. § 1132(a); and (2) express preemption under ERISA § 514(a), *see* 29 U.S.C. § 1144(a). *Paulsen v. CNF Inc.,* 559 F.3d 1061, 1081 (9th Cir.2009). Both preemption provisions overcome state law claims for relief. *See Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1108 (9th Cir. 2011). Only complete preemption, however, also confers federal jurisdiction over state law claims. *Id.* at 1108 (citing *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009)).

Order Denying Defendants' Motion to Dismiss

### 1. Complete Preemption

ERISA § 502(a) sets forth a detailed civil enforcement mechanism intended "to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Davila,* 542 U.S. at 207 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)); *see* 29 U.S.C. § 1132. Any plan participant or beneficiary must utilize this enforcement system in order to recover benefits of their employee benefit plan, to enforce their rights under the plan, or to clarify future benefits under the plan. *Davila,* 542 U.S. at 207; *Dedeaux*, 481 U.S. at 54 (explaining that the remedies provided under ERISA are meant to be exclusive). Accordingly, any state law claim "that duplicates, supplements, or supplants" this civil enforcement scheme is preempted as it conflicts with congressional intent to create a uniform regulatory regime. *Id.* at 209 (explaining that the "pre-emptive force" of § 502 is so strong that it can transform a state claim into a federal claim for the purpose of subject matter jurisdiction); *see Cleghorn v. Blue Shield of Cal.,* 408 F.3d 1222, 1225 (9th Cir. 2005) ("A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme.").

Under the Ninth's Circuit's two part test, a state law claim is superseded by § 502 if: (1) an individual could have brought the same action under ERISA § 502(a)(1)(B); *and* (2) there exists no other independent legal duty that is implicated by a defendant's actions. *Davila,* 542 U.S. at 210; *Marin General Hosp.,* 581 F.3d at 946 (emphasizing that both prongs of the test must be satisfied for preemption to apply). Here, the FAC is not preempted by § 502. Plaintiffs could not have brought this action under § 502 because they do not seek to recover benefits, to enforce their rights, or to clarify future opportunities under the plan. Rather, they simply assert state tort claims arising from defendants' alleged negligence in maintaining their drug formularies and in educating Kaiser physicians. When considering these claims, there is, therefore, no need to construe the plan language or determine the breadth of the plan's terms. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (explaining that the crucial question under complete preemption is whether the claims require construction of the plan language); *Roessert v. Health Net*, 929 F. Supp.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

6

343, 351 (N.D. Cal. 1996) ("[S]ince the disputed action does not require interpretation of the plan, there is no reason to believe that state resolution of the disputed medical decision would affect the important uniformity of federal ERISA law").

Furthermore, defendants' action, or inaction, does implicate an independent legal duty, namely the duty to provide adequate medical treatment. *Roessert*, 929 F. Supp. at 351; *see Bui*, (applying preemption only to claims which challenge denial of benefits).  There is no basis, therefore, to conclude that plaintiffs' claims seek to duplicate or supplant ERISA's civil enforcement scheme so as to require preemption under § 502.

### 2. Express Preemption

ERISA's express preemption provisions are broader than § 502 and supersede all state claims which "relate to any employee benefit plan." 29 U.S.C. § 1144 (preempting all relevant state "laws, decisions, rules, regulations, or other State action having the effect of law").  A common law claim is deemed to be "related" to an ERISA plan "if it has a connection with or reference to such a plan." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995) (refusing to construe broadly the phrase "relate to"); *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (emphasizing the importance of considering the state claim's actual relationship to the benefit plan).  Under this "relates to" standard, the Ninth Circuit has preempted four types of state laws: those which (1) govern the type of benefits provided under ERISA plans, *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983); (2) "create reporting, disclosure, funding or vesting" requirements for ERISA plans, *Standard Oil Co. v. Agsalud,* 633 F.2d 760 (9th Cir. 1980); (3) provide rules for calculating benefits offered under an ERISA plan, *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504 (1981); or (4) regulate remedies for misconduct related to the administration of an ERISA plan, *Scott v. Gulf Oil Corp*. 754 F.2d 1499 (9th Cir. 1985). *See Cox v. Eichler*, 765 F. Supp. 601, 605-06 (N.D. Cal. 1990).  The guiding principle of these categories is whether the "state law is 'part of the administration of an employee benefit plan,'" specifically the failure to pay enrollees earned benefits or the mismanagement of funds related to these benefits. *Matori Bros. Distribs. v. James-Massengale*, 781 F.2d 1349, 1358-59 (9th

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

7

1 Cir. 1986); *Roessert*, 929 F. Supp. at 348 ("State law claims which arise either directly or indirectly from the administration of the plan are preempted."). To determine whether this principle applies, courts must "look to the behavior underlying the allegations in the complaint." *Bui*, 310 F.3d at 1147.

At base, the conduct underlying the FAC does not relate to ERISA plan administration. Rather, the behavior is grounded soundly in allegations of negligence, fraud, and misrepresentation, "traditional fields of state regulation." *Id.* at 1148. Plaintiffs allege defendants were reckless in their distribution of gabapentin and in their overall treatment of Borreani. Specifically, the FAC maintains that the Kaiser Permanente Medical Group employed physicians who committed medical malpractice, the Kaiser Foundation Hospitals and pharmacies breached their duties of care and disclosure, and the Kaiser Foundation Health Plan, acting as a *provider* of health care, not as an insurer or administrator, contributed to the negligent medical decisions made in the course of decedent's treatment. According to the pleadings, defendants were thereby collectively responsible for the improper medical decisions which ultimately caused Borreani's death. These claims should, therefore, not be preempted because they involve "medical decision[s] made in the course of treatment . . . [not] administrative decision[s] made in the course of administering an ERISA plan." *Id.* at 1149.

The Ninth Circuit applied similar reasoning in *Bui* to overturn the district court's decision to preempt plaintiff's claims based in traditional fields of state regulation. *Id.* In that case, plaintiff brought suit on behalf of her deceased husband, Duong, against his employer, AT & T/ Lucent, and against SOS, a company which contracted with AT & T/ Lucent to provide medical advice and evacuation services. While working in Saudi Arabia, Duong required immediate surgery for two myocardial infractions. Pursuant to defendants' advice, he decided to stay in Saudi Arabia for the procedure rather than be evacuated abroad to a hospital more experienced in treating his condition, resulting in his death. His wife, thereafter, filed suit, alleging that both SOS and AT & T/ Lucent negligently caused Duong's death by providing misguided advice as to whether he should stay in Saudi Arabia and by failing to inform Duong that it was possible for him to retrieve his passport in

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

8

order to travel abroad. Plaintiff also asserted breach of contract claims against AT & T/ Lucent. The district court granted summary judgment to defendants stating that ERISA expressly preempted all of plaintiff's claims.

The Ninth Circuit reversed in part and affirmed in part, holding that the only claims superseded by ERISA were the breach of contract claims and the claim against Lucent for negligent retention of SOS as a service provider. The contract claims were preempted because they did "not merely reference the ERISA plan" but also "require[d] its construction because the contract allegedly breached is the ERISA plan itself." *Id.* at 1151-52. The Court further preempted the negligent retention claim because "the retention of providers is a necessary part of the administration of an ERISA plan." *Id.* at 1152. The Court refused, however, to preempt the remaining claims asserted against SOS for providing negligent advice, for failing to respond to evacuation requests, and for refusing to evacuate Duong, or against Lucent for failing to inform decedent of his passport availability and for providing negligent medical advice. In so refusing, the Ninth Circuit explained that, the claims "do not mandate employee benefit structure or their administration, do not preclude uniform administration, and do not provide alternative enforcement mechanisms." *Id*. at 1148. Rather, plaintiff was merely asserting traditional state law claims arising from the negligent provision of medical care; this care merely happened to arise from an ERISA plan. *Id*. at 1148 (emphasizing that preemption of medical malpractice claims would lead to "absurd" results). It was irrelevant, therefore, that some of the claims required reference to this plan, because the claims "at root" alleged "negligence in the provision of medical care." *Id.* at 1150 ("Mere reference to an ERISA plan does not lead to preemption."). The Court further explained that these claims should not be preempted because unlike most preempted state claims which challenge the denial of benefits, Duong received the benefit of medical advice, albeit in a negligent manner. *Id.* at 1149.

Similarly here, plaintiffs do not contend that Borreani failed to receive promised benefits. They concede he was treated and received the medical advice he was promised under his ERISA plan. Rather, the FAC simply alleges the advice was negligent and deceptive. *See id.* at 1149

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

9

(upholding plaintiff's claim because it was for the negligent provision of a benefit).  This reasoning applies to all named Kaiser entities because each was wearing "the hat of a [medical] service provider" rather than that of an ERISA administrator in providing benefits related to the prescription of gabapentin.  *See id.* at 1153; *Corporate Health Ins., v. Tex. Dept. of Ins.*, 215 F.3d 526, 534 (5th Cir. 2000) (explaining that managed care providers are subject to state law claims for medical malpractice when they are wearing "their hats as medical care providers").

Defendants object to this classification, arguing they were acting not as medical providers, but as ERISA administrators in managing their drug formularies.  Invoking *Saltzman v. Independence Blue Cross*, 634 F. Supp. 2d 538 (E.D. Pa. 2009), Kaiser contends that in that case, the district court determined an employee welfare benefit plan's open formulary for listing medications was an ERISA plan document.  Kaiser reasons that its drug formulary should similarly be deemed a plan document essential to the operation and administration of decedent's plan.  In *Saltzman*, however, a case that did not reach the issue of § 514 preemption, the considered drug formulary was quite distinct from the one at issue here.  The Court determined that the formulary was a plan document because it not only listed drugs, but also included the plan's copayment system.  Without the formulary both insured and insurer "would be unaware of exactly how much the insurer would pay for a prescription drug, and therefore how much the insured would be required to copay."  *Id.* at 557.  Additionally, the insurer would only cover drugs listed within the formulary.  Alternatively, here Kaiser will pay for off-formulary prescriptions and, therefore, the list does not implicate benefits decisions.  Kaiser's decision to provide these formularies presumably stems from its desire to provide medical care not from its need to regulate coverage or administer benefits under the plan.  Consequently, the claims related to defendants' negligence in maintaining and utilizing these formularies neither require plan interpretation, *Providence Health Plan v. McDowell*, 385 F,3d 1168, 1172 (9th Cir. 2004), nor improperly "subvert the intent of Congress to allow for the uniform administration of benefits," *Bui*, 310 F.3d at 1148, and should not be preempted under § 514.

3. <u>Jurisdiction</u>

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

10

Absent ERISA jurisdiction under 29 U.S.C. § 1132(e), there is no basis for federal jurisdiction. Accordingly, this case is remanded to state court. *See Villegas v. The Pep Boys Manny Moe & Jack of Cal.*, 551 F. Supp. 2d 982, 985 (C.D. Cal. 2008) ("The Court must remand to state court if it determines, as Machado urges, that ERISA preemption does not apply because it would thereby lack subject matter jurisdiction."); *Patel v. Sugen, Inc.*, 354 F. Supp. 2d 1098, 1101 (N.D. Cal. 2005) ("[T]his is not an ERISA case, and the court therefore lacks ERISA jurisdiction under 29 USC § 1132(e).").[2]

## V.  CONCLUSION

Defendants' motion to dismiss is denied. This matter is remanded to the Napa County Superior Court for lack of federal subject matter jurisdiction.

IT IS SO ORDERED.

Dated: 6/22/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[2] In light of the absence of federal jurisdiction over this action, the Court need not address defendants' alternative arguments premised on the learned intermediary doctrine and the Medical Injury Compensation Reform Act with respect to the state law claims advanced in the FAC.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

11